UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| DENNIS OBADO, | Civil Action No. 3:13-cv-02382-JAP-TJB |
| Plaintiff, | Hon. Tonianne J. Bongiovanni |
| v. | Return Date: October 21, 2013 |
| ED MAGEDSON et al., | |
| Defendants. | |

---

**BRIEF IN SUPPORT OF WHITEPAGES, INC. AND SWITCHBOARD LLC'S MOTION
TO DISMISS PLAINTIFF'S CLAIMS AGAINST WHITEPAGES, INC. AND
SWITCHBOARD LLC PURSUANT TO FED. R. CIV. P. 12(B)(6)**

---

Venkat Balasubramani (*pro hac vice* pending)
Sean McChesney (*pro hac vice* pending)
FOCAL PLLC
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
Tel: (206) 529-4827
Fax: (206) 260-3966

Michael LiPuma, Esq.
LAW OFFICE OF MICHAEL LIPUMA
325 Chestnut Street, Suite 1109
Philadelphia, PA 19106
Tel: (215) 922-2126
Fax: (215) 922-2128

*Attorneys for Defendants WhitePages, Inc. and Switchboard LLC*

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  FACTS ALLEGED IN COMPLAINT .................................................... 2
     A.  Allegations of Defamation ............................................................. 2
     B.  Allegations of "Reverse Age Discrimination" ............................... 3
     C.  Allegations of Fraud ..................................................................... 4
     D.  Allegations Against Defendants Other Than the WhitePages Parties ........................... 4

III. ARGUMENT ........................................................................................ 6
     A.  Mr. Obado Fails to State a Claim Against the WhitePages Parties Pursuant to Fed. R.
         Civ. P. 12(b)(6) .......................................................................... 6
         1.  Defamation-Based Counts Two, Thirteen, and Sixteen Fail to Allege a False
             Statement ....................................................................... 8
         2.  Count Ten for "Reverse ADEA Discrimination" Fails to Allege a Protected
             Activity, an Adverse Employment Action, or a Causal Connection Between Them
             ................................................................................. 10
         3.  Count Twelve for "Common Law Fraud" Fails to Allege Any of the Requisite
             Five Elements ................................................................ 12
         4.  All Other Counts of the Complaint Fail to Allege Any Specific Actions Taken by
             the WhitePages Parties ..................................................... 12
     B.  Section 230 of the Communications Decency Act Bars Mr. Obado's Claims ............ 13
         1.  The WhitePages Parties Provide an Interactive Computer Service .................... 15
         2.  Mr. Obado Treats the WhitePages Parties as a "Publisher" of His Age .............. 16
         3.  Mr. Obado Alleges that the WhitePages Parties Published His Accurate Age –
             Which the WhitePages Parties Must Have Obtained from Third Parties ............ 16

IV.  CONCLUSION ................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................7, 8, 17

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544 (2007)..............................................................7, 12, 13, 16

*Benak v. Alliance Capital Management, L.P.,*
349 F. Supp. 2d 882 (D.N.J. 2004)........................................................1

*Blumenthal v. Drudge,*
992 F. Supp. 44 (D.D.C. 1998)...........................................................15

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,*
519 F.3d 666 (7th Cir. 2008)...............................................................14

*Dart v. Craigslist,*
665 F.Supp.2d 961 (2009)...................................................................14

*DeAngelis v. Hill,*
180 N.J. 1, 847 A.2d 1261 (2004).........................................................9

*Dimeo v. Max,*
433 F. Supp. 2d 523 (E.D. Pa. 2006)...................................14, 15, 16

*Directory Assistants v. SuperMedia, LLC,*
884 F. Supp. 2d 446 (E.D. Va. 2012)..................................................16

*Doe v. MySpace, Inc.,*
528 F.3d 413 (5th Cir. 2008)...............................................................14

*Egervary v. Young,*
366 F.3d 238 (3d Cir. 2004)................................................................10

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,*
521 F.3d 1157 (9th Cir. 2008).............................................................15

*Fasold v. Justice,*
409 F.3d 178 (3d Cir. 2005)................................................................11

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009)..................................................................8

*G.D. v. Kenny,*
411 N.J. Super. 176, 984 A.2d 921 (App.Div. 2009) .............................9

*Gennari v. Weichert Realtors,*
148 N.J. 582, 691 A.2d 350 (1997)......................................................12

*Green v. Am. Online (AOL),*
318 F.3d 465 (3d Cir. 2003)........................................................14, 15

*Hedges v. United States,*
404 F.3d 744 (3d Cir. 2005)..................................................................7

*Higgins v. Pascack Valley Hosp.,*
307 N.J. Super. 277, 704 A.2d 988 (N.J. Super. App. Div. 1998) ............10

*Jewish Ctr. of Sussex County v. Whale,*
86 N.J. 619, 432 A.2d 521 (1981)........................................................12

*Kost v. Kozakiewicz,*
1 F.3d 176 (3d Cir. 1993).....................................................................7

*Leang v. Jersey City Bd. of Educ.,*

198 N.J. 557, 969 A.2d 1097 (2009)............................................................................................... 9
*Noah v. AOL Time Warner, Inc.,*
261 F. Supp. 2d 532 (E.D. Va. 2003) .................................................................................. 14, 16
*People by Abrams v. Holiday Inns,*
No. 83-CV-564S, 86-CV-103S, 1993 U.S. Dist. LEXIS 1301 (W.D.N.Y. Jan. 28, 1993) ....... 11
*Phillips v. County of Allegheny,*
515 F.3d 224 (3d Cir. 2008)............................................................................................................ 7
*Ward v. Zelikovsky,*
136 N.J. 516, 643 A.2d 972 (1994).............................................................................................. 9
*Zeran v. American Online Inc.,*
129 F.3d 327 (4th Cir. 1997) ...................................................................................................... 14

**Statutes**
29 U.S.C. § 621, *et seq*.................................................................................................................. 10
47 U.S.C. §230.................................................................................................................... passim

**Other Authorities**
Restatement (Second) of Torts §§ 440-41 (1965)......................................................................... 10

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ............................................................................ passim

## I.    PRELIMINARY STATEMENT

WhitePages, Inc., owner and operator of the website at www.whitepages.com and parent corporation of Switchboard LLC, owner and operator of the website named as Defendant Switchboard.com (WhitePages, Inc. and Switchboard LLC are hereinafter referred to collectively as the "WhitePages Parties") move to dismiss all of Plaintiff Dennis Obado's claims against the WhitePages Parties in this lawsuit pursuant to Fed. R. Civ. P. 12(b)(6).[1]  All of Mr. Obado's claims against the WhitePages Parties are based on its publication of his age – which Mr. Obado has disclosed to the public in his Second Amended Complaint (("SAC"), Dkt. No. 9, ¶¶156 – "Plaintiff is at the age of 42") and in at least one previous public filing with a federal court.[2]

None of Mr. Obado's claims against the WhitePages Parties are well-pleaded under Rule 12(b)(6), and by Mr. Obado's own admissions his allegations fail to state a claim. He claims the WhitePages Parties defamed him by publishing his correct age on the internet – but defamation requires a *false* statement, which Mr. Obado does not allege the WhitePages Parties ever made. He claims "reverse age discrimination" because employers allegedly did not hire him after the WhitePages Parties correctly announced his age.  But he fails to discuss any elements of such a claim, or to provide any facts that might lead this Court to conclude that the WhitePages Parties

---

[1] WhitePages, Inc., though not named as a party within Section II of the Complaint, is referred to as a defendant in other portions of the Complaint.  (*See, e.g.*, p. 24, ¶ 63).  WhitePages joins in this Motion without waiving its arguments based on Mr. Obado's failure to properly serve WhitePages with the Second Amended Complaint.

[2] *See, e.g.*, Mr. Obado's Complaint (Dkt. No. 1) filed on December 12, 2011, in *Obado v. Manchanda*, United States Bankruptcy Court for the Southern District of New York Case No. 11-14666 (SMB) (attached as Exhibit A to the Declaration of Venkat Balasubramani filed concurrently herewith) – on page 41 of 55 of the 2011 complaint, Mr. Obado provides his date of birth – June 15, 1970.

On a motion to dismiss, the Court may take judicial notice of publicly available documents.  *See, e.g., Benak v. Alliance Capital Management, L.P.*, 349 F. Supp. 2d 882, 888 n.8 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  WhitePages requests judicial notice of Mr. Obado's 2011 complaint– the fact that Plaintiff filed a publicly-available complaint with a federal bankruptcy court two years ago, and that the complaint revealed his birth date, is not subject to reasonable dispute.

discriminated against him. Indeed, as arms-length third parties, who do not have an employment or other relationship with Mr. Obado, the WhitePages Parties cannot be held liable for any sort of age discrimination. Mr. Obado further claims "common law fraud" but his SAC does not allege that the WhitePages Parties' conduct met any of the required elements. Numerous other causes of action in the SAC are not specifically directed to the WhitePages Parties – and if they are intended to be, they are so vague that they fail to meet the fair notice requirement of Fed. R. Civ. P. 8(a)(2).

Mr. Obado's claims are also barred by Section 230 of the Communications Decency Act, which provides broad immunity to online intermediaries from causes of action based on the publication of information that originated with third-parties (as opposed to the intermediary itself). Mr. Obado does not claim that the WhitePages Parties' accurate information about his age originated with the WhitePages Parties – nor is there any plausible way it *could* have originated with the WhitePages Parties. Consequently, all of Mr. Obado's causes of action are barred by Section 230.

Accordingly, the WhitePages Parties respectfully request that the Court dismiss Mr. Obado's claims against them in their entirety, and with prejudice.

## II.   FACTS ALLEGED IN COMPLAINT

Mr. Obado's Second Amended Complaint is rambling and vague – but he appears to have alleged three causes of action against WhitePages. These are: "reverse age discrimination", "defamation via online age posting", and fraud. (*See* Plaintiff's Second Amended Complaint ("SAC"), Dkt. No. 9, ¶¶16, 57 ("all Defendants engaged in common law fraud"), 63.)

### A.   Allegations of Defamation

Mr. Obado claims the WhitePages Parties are liable for "defamation via online age

posting." (SAC ¶ 15.)  "Count Two" of the SAC alleges "intentional infliction of emotional distress" based on alleged defamation of Mr. Obado.  (SAC ¶¶25-27.)  Count Thirteen alleges "defamation" based on the WhitePages Parties' disclosure of Plaintiff's age.  (SAC ¶63.)  Mr. Obado states that the whitepages.com website's "age section either shows Plaintiff's actual age, or makes Plaintiff over the age of 60, if Plaintiff chooses not to disclose his age."  (*Id.*)  Other allegations in Count Thirteen relate to other defendants and involve statements the WhitePages Parties are not specifically alleged to have made.  (SAC ¶¶61-84.)

Count Sixteen is for "damage to reputation, and damage to emotional and mental health." (SAC ¶¶ 127-129 [the latter is inaccurately labeled as the second "¶126"].)  This is essentially a restatement of Mr. Obado's defamation claim, as the allegations in this count address the damage caused by "false defamatory blogs" and "defamatory documents posted on public internet search results."  (SAC ¶ 128.)  The second "Count Sixteen" appears to be another, longer version of the first Count Sixteen – like the first one, it addresses "damage to reputation, and damage to emotional and mental health."  (SAC ¶¶ 127-137.)

Mr. Obado only claims that the WhitePages Parties published Mr. Obado's correct age or – after Mr. Obado requested that his precise age not be published – that the WhitePages Parties placed him in a broad age category including people over 60.  (SAC ¶ 63.)  Mr. Obado does not allege that the WhitePages Parties made any false statements about his age.

**B.      Allegations of "Reverse Age Discrimination"**

Mr. Obado alleges the WhitePages Parties "[used] Plaintiff's personal information . . . in order to facilitate, and encourage age discrimination against Plaintiff, online, in violation of ADEA, and NJLAD . . . ."  (SAC ¶ 16.)  "Count Ten" of the SAC claims "reverse ADEA discrimination" based on the WhitePages Parties' online posting of Plaintiff's "advanced age",

which Mr. Obado claims "negatively affect[ed] Plaintiff's ability to procure employment, and to pursue higher education . . . ." (SAC ¶¶ 50-51.)  Although Mr. Obado mentions NJLAD in passing, none of his alleged causes of action seek damages for an alleged NJLAD violation.

Mr. Obado does not allege that he was ever a WhitePages, Inc. or Switchboard LLC employee.  The SAC does not allege that Mr. Obado engaged in any activity that led to retaliation from an employer.  The SAC never states that any employer retaliated against Mr. Obado – or took any adverse action at all – as a result of any activity Mr. Obado performed.  Mr. Obado merely alleges that the WhitePages Parties published his age on the internet.

**C.     Allegations of Fraud**

"Count Twelve" of the SAC is vague – it alleges "common law fraud" based on "all Defendants[']" application of their terms of use and other policies and contracts "in a manner that facilitated further defamation of Plaintiff." (SAC ¶ 57.)  But this cause of action does not specify any material misrepresentation by the WhitePages Parties of a presently existing or past fact, any knowledge or belief by the WhitePages Parties of its falsity, any intention that Mr. Obado rely on an allegedly false statement, any reasonable reliance thereon by Mr. Obado, or any resulting damages.  (SAC ¶¶ 57-60.)

**D.     Allegations Against Defendants Other Than the WhitePages Parties**

The SAC alleges 17 causes of action, most of which apparently are not directed against the WhitePages Parties:

- "Count One" involves defamatory remarks about Mr. Obado's mental health and alleged criminal background – but Mr. Obado does not claim the WhitePages Parties published any of these statements.  (SAC ¶¶ 20-24.)

- Count Three is for negligent infliction of emotional distress, based on allegedly

4

defamatory remarks about Plaintiff's history as a "sexual predator" and criminal – but again he does not allege that the WhitePages Parties published these statements. (SAC ¶¶ 28-32.)

- Count Four relates to "New Jersey Consumer Fraud violations." (SAC ¶¶ 33-35.) While this cause of action begins with the words "All Defendants did not comply with their online terms of use policies . . .", it involves the same allegations of false statements as Counts Two and Three. (*Id.*) Since the SAC does not specifically allege that the WhitePages Parties made any false statements about Mr. Obado, this claim does not appear to be directed at the WhitePages Parties.

- Count Five requests punitive damages for false statements allegedly made by an anonymous blogger, "Mama Duka" -- that do not involve the WhitePages Parties. (SAC ¶¶ 36-39.) Mr. Obado does not specifically allege that the WhitePages Parties published these statements. (*Id.*)

- Count Six relates to "improper publication of private facts" – namely, information about Plaintiff's mental health and criminal record. (SAC ¶¶ 40-42.) The WhitePages Parties are not alleged to have published this information. (*Id.*)

- Count Seven alleges "invasion of privacy" based on other Defendants' alleged publication of a "private phone conversation." (SAC ¶¶ 43-44.)

- Count Eight is for "intrusion upon seclusion" and claims other Defendants – specifically Diop Kamau and Intelius – posted "Plaintiff's age, past and present home address, and legal information." (SAC ¶¶ 45-46.)

- Count Nine claims other defendants painted Mr. Obado in a "false light" by distributing "Mama Duka's false defamatory blogs" and other information that the

5

WhitePages Parties are not claimed to have circulated.  (SAC ¶¶ 47-49.)

- Count Eleven ("Unfair and Deceptive Practices Claims Under State Law") is vague, but appears to be directed to the publication of information concerning Mr. Obado's alleged mental illness.  (SAC ¶¶ 52-56.)  Accordingly, this cause of action appears not to be directed toward the WhitePages Parties.

- Count Fourteen bears the cryptic title "The Blogs and Document's Defamatory Meaning."  (SAC ¶¶ 85-120.)  It appears to relate to "Defendants' alleged unilateral unsubstantiated diagnosis of Plaintiff as Mentally Ill . . . ."  (SAC ¶ 89), as well as the publication of other allegedly false facts which Mr. Obado does not allege the WhitePages Parties ever engaged in.  (SAC ¶¶ 85-120.)

- Count Fifteen for "intentional infliction of emotional distress" involves "false, defamatory blogs" that Mr. Obado does not specifically claim the WhitePages Parties posted. (SAC ¶¶ 121-126.)

- Count Seventeen – "Fault – Negligence and Actual Malice" – relates to the characterization of Plaintiff as a "sexual predator" and does not appear to be directed toward the WhitePages Parties, which Mr. Obado does not specifically allege to have made any such claim.  (SAC ¶¶ 138-145.)  Mr. Obado does allege that the WhitePages Parties were "put on notice about the false defamatory blogs… but did not take any action."  (SAC ¶144.) But Plaintiff does not allege the WhitePages Parties had any duty to take action regarding other parties' publication of "false defamatory blogs", nor does he claim that the WhitePages Parties ever published them.

None of the above causes of action provide a short and plain statement of any claim

against the WhitePages Parties -- let alone any statement showing that Mr. Obado is entitled to relief against the WhitePages Parties, or any information sufficient to provide the WhitePages Parties with fair notice of a claim or the grounds upon which that claim rests.

## III.   ARGUMENT

### A.   Mr. Obado Fails to State a Claim Against the WhitePages Parties Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In *Bell Atlantic Corporation v. Twombly*, the Supreme Court held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

Following *Twombly*, the United States Court of Appeals for the Third Circuit has explained that a factual allegation in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.*

7

(quoting *Twombly*, 550 U.S. at 556).

In *Ashcroft v. Iqbal*, the Supreme Court applied the *Twombly* standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

After *Iqbal*, a two-part analysis is required when a district court evaluates a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Third Circuit has set forth this two-part analysis as follows:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Id.* (citing *Iqbal*, 556 U.S. at 679). After completing this analysis, if "'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not show[n] - that the pleader is entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d at 211 (quoting *Iqbal*, 129 S. Ct. at 1950). These factual allegations must

8

present a plausible basis for relief (i.e. something more than the mere possibility of legal misconduct). *See Iqbal*, 556 U.S. at 678.

### 1.    Defamation-Based Counts Two, Thirteen, and Sixteen Fail to Allege a False Statement

In Mr. Obado's state of residence, New Jersey, a defamation claim has three elements: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 585, 969 A.2d 1097 (2009) (quoting *DeAngelis v. Hill*, 180 N.J. 1, 13, 847 A.2d 1261 (2004)). As a matter of law, a true statement cannot be defamatory. *G.D. v. Kenny*, 411 N.J. Super. 176, 187, 984 A.2d 921, 928 (App.Div. 2009). A truthful statement will not support a cause of action based on defamation, and consistent with the First Amendment, the truth of the statement is an absolute defense to a claim of defamation. *Ward v. Zelikovsky*, 136 N.J. 516, 530, 643 A.2d 972 (1994) ("True statements are absolutely protected under the First Amendment.").

Mr. Obado's SAC does not allege that the WhitePages Parties made any false statements. Plaintiff alleges that the "age section" of the whitepages.com and switchboard.com websites "either shows Plaintiff's actual age, or makes Plaintiff over the age of 60, if Plaintiff chooses not to disclose his age." (SAC ¶ 63.) The first part of this statement admits the WhitePages Parties made true statements, which *per se* cannot be defamatory. The second part – "makes Plaintiff over the age of 60" – is puzzling. It does not say WhitePages Parties published an age for Mr. Obado that was over 60. It is impossible for the WhitePages Parties to have increased Mr. Obado's age, thereby literally "making" him "over 60." Plaintiff's statement could mean that, after Mr. Obado requested that his precise age not be disclosed, the WhitePages Parties included Mr. Obado in a demographic group such as "men between 40 and 65." But leaving speculation

aside, even when this statement is accepted as true for purposes of this motion, it is vague and fails to make a clear allegation that the WhitePages Parties falsely stated Mr. Obado's age. Consequently, Mr. Obado fails to allege that the WhitePages Parties defamed him – and his defamation-based Counts Two, Thirteen, and Sixteen fail with respect to the WhitePages Parties.

In addition, even assuming that the WhitePages Parties somehow placed Mr. Obado in an older category of individuals for demographic purposes, there is nothing defamatory about this statement. A defamatory statement is "one that is false and 'injurious to the reputation of another' . . . or subjects another person to a 'loss of the good will and confidence' in which he or she is held by others." *Higgins v. Pascack Valley Hosp.*, 307 N.J. Super. 277, 302, 704 A.2d 988, 1002 (N.J. Super. App. Div. 1998). Saying that someone is older than they are – even assuming the WhitePages Parties made statements to this effect – is not defamatory under New Jersey law. To the extent Mr. Obado's qualm is that the WhitePages Parties allegedly published incorrect age information about him and that third parties utilized this information to commit age discrimination, not only does the ADEA *not* provide for liability as to the WhitePages Parties in this circumstance — see section I.B. below — but Mr. Obado faces an insurmountable hurdle as to causation. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) ("[A]n intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about.") (citing Restatement (Second) of Torts §§ 440-41 (1965)). In sum, Mr. Obado's defamation claim fails as a matter of law.

**2.     Count Ten for "Reverse ADEA Discrimination" Fails to Allege a Protected Activity, An Adverse Employment Action, or a Causal Connection Between Them**

Mr. Obado's Count Ten alleges "reverse ADEA discrimination." Even a brief glance at

10

the relevant statute – the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*.

("ADEA") – reveals that Mr. Obado has no ADEA claim against the WhitePages Parties. At 29

U.S.C. § 623, the ADEA lists the parties who are prohibited from age discrimination practices:

employers, labor unions, employment agencies, and the like – all of whom are employers or

entities through which a plaintiff may gain employment. Mr. Obado does not allege that he was

ever a WhitePages, Inc or Switchboard LLC employee or that the WhitePages Parties ever had

anything to do with his employment.  He only alleges the WhitePages Parties published his age

on the internet.  And he fails to specify what he believes "reverse ADEA discrimination" is, let

alone set forth its elements, or describe how the WhitePages Parties' alleged conduct met those

elements.

To state a claim under the ADEA, a plaintiff must allege three elements: (1) the employee

engaged in a protected activity; (2) the employee was subjected to an adverse employment

action; (3) there is a causal connection between the protected activity and the adverse

employment action. *Fasold v. Justice*, 409 F.3d 178, 188-89 (3d Cir. 2005).  Mr. Obado alleges

none of these things. His SAC does not include the phrase "protected activity", nor does it allege

that he engaged in any activity that led to retaliation from an employer.  And he never specifies

that any employer ever retaliated against him – or took any adverse action at all – as a result of

any activity he undertook.  If any employer did take adverse action, that employer is a third party

for whose conduct the WhitePages Parties are not responsible.

The only thing Mr. Obado claims is that the WhitePages Parties' accurate publication of

his age "negatively affect[ed] Plaintiff's ability to procure employment."  (SAC ¶ 50.)  But he

does not provide any details to substantiate this allegation.  More importantly, he does not allege

an employment or other relationship with WhitePages, Inc. or Switchboard LLC.  Any actionable

conduct was engaged in, if at all, by third parties.  The WhitePages Parties cannot be held legally responsible for the actions of third parties under the relevant statutes.  *See People by Abrams v. Holiday Inns*, No. 83-CV-564S, 86-CV-103S, 1993 U.S. Dist. LEXIS 1301, at *29-30 (W.D.N.Y. Jan. 28, 1993) (setting forth test for third party liability under the ADEA: "(1) the third party must be an employer within the statutory definition of Title VII and/or the ADEA, (2) the third party must interfere with an employment relationship, (3) the third party must be in such a position so as to exert significant control over access to or the working environment of the complaining party").  Thus, Mr. Obado's age discrimination claims against the WhitePages Parties must be dismissed.

### 3. Count Twelve for "Common Law Fraud" Fails to Allege Any of the Requisite Five Elements

To establish a prima facie case of common law fraud, a plaintiff must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  *Gennari v. Weichert Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997).  "Every fraud in its most general and fundamental conception consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith."  *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624, 432 A.2d 521 (1981).

Mr. Obado fails to allege any of the elements of common law fraud against the WhitePages Parties in the SAC.  Plaintiff fails to specify any material misrepresentation by the WhitePages Parties of a presently existing or past fact, any knowledge or belief by the WhitePages Parties of its falsity, any intention that Mr. Obado rely on an allegedly false statement, any reasonable reliance thereon by Mr. Obado, or any resulting damages.  (SAC ¶¶

12

57-60.) Consequently, he fails to state a claim for common law fraud against the WhitePages Parties.

### 4. All Other Counts of the Complaint Fail to Allege Any Specific Actions Taken by the WhitePages Parties

To survive a Rule 12(b)(6) motion to dismiss, a claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

As discussed above, five of Mr. Obado's seventeen causes of action appear to be directed to the WhitePages Parties – and all of them fail pursuant to Fed. R. Civ. P. 12(b)(6). And as indicated in subsection D of the above section titled "Facts Alleged in Complaint," Mr. Obado's other twelve claims do not argue that the WhitePages Parties engaged in the activities for which other parties are allegedly liable. For example, Mr. Obado does not allege that the WhitePages Parties published remarks about his criminal record or his alleged mental illness. (*See, e.g.,* SAC ¶¶ 20-24.)[3] Assuming *arguendo* that any of those twelve causes of action are intended to state a claim against the WhitePages Parties, those claims are so vague that they fail to provide fair notice to the WhitePages Parties as required by *Twombly*.

For the foregoing reasons, Mr. Obado fails to state a claim against the WhitePages Parties

---

[3] In the SAC, Plaintiff himself addresses some issues regarding his mental health — arguably undermining his claim that third-parties have defamed him by questioning it:
* "Defendant has sleepless nights... due to car alarms, and other forms of harassment, such as causing the local public to taunt Plaintiff, by subjecting Plaintiff to a chorus of car horns, train horns, and other audio devices, which are sounded off, everytime [sic] Plaintiff walks into town, or goes shopping, which causes Plaintiff to be reviled, despised, and hated . . . ." (SAC ¶ 125.)
* "[O]ther vehicular audio devices... send cryptic messages, when Plaintiff is about to leave . . . ." (SAC ¶ 129.)
* "Nearby trains, sound their cryptic horn messages, when Plaintiff is about to leave, or when Plaintiff is walking down town New Brunswick . . . Plaintiff has lost his private life, since Plaintiff is followed to public places, such as libraries, coffee shops, and post offices, due to this online defamation." (SAC ¶ 132.)

in this action, and all causes of action against WhitePages must be dismissed.

**B.       Section 230 of the Communications Decency Act Bars Mr. Obado's Claims**

      All of Mr. Obado's claims are further barred by Section 230 of the Communications

Decency Act, 47 U.S.C. §230 ("Section 230").  Section 230 provides a broad grant of immunity

to online intermediaries against causes of action based on information that does not originate

with those intermediaries.  As one court has noted:

> By its terms, §230 provides immunity... as a publisher or speaker of information
> originating from another information content provider. The provision "precludes
> courts from entertaining claims that would place a computer service provider in a
> publisher's role," and therefore *bars "lawsuits seeking to hold a service provider
> liable for its exercise of a publisher's traditional editorial functions -- such as
> deciding whether to publish, withdraw, postpone, or alter content."*

*Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (citing *Zeran v. American Online*

*Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (emphasis added)).  While a plaintiff may hold the party

who created or developed the allegedly harmful information liable, the plaintiff may not hold

liable an interactive computer service provider that merely enables the information to be posted

online.  *See, e.g., Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008); *Chicago Lawyers'*

*Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008);

*Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997).  Section 230's immunity applies

broadly to preclude a wide range of claims against providers of interactive computer services

based on information that they make available, including the types of claims asserted by Mr.

Obado against the WhitePages Parties—*i.e.*, claims for defamation, age discrimination, and

fraud.  *See, e.g., Dart v. Craigslist*, 665 F.Supp.2d 961, 969 (2009) (Section 230 bars attempt to

hold interactive computer service provider liable based on public nuisance theory for making

available erotic services section); *Dimeo v. Max*, 433 F. Supp. 2d 523, 532 (E.D. Pa. 2006)

(refusing to allow amendment of complaint to add intentional infliction of emotional distress

14

claim as claim was barred by § 230(c)); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 538 (E.D. Va. 2003) (holding that § 230(c) bars claims for intentional infliction of emotional distress, unjust enrichment, negligence and fraud).

Three elements are required for §230(c)(1) immunity. First, the defendant must be a provider or user of an "interactive computer service." Second, the asserted claims must treat the defendant as a publisher or speaker of information. Third, the challenged communication must be "information provided by another information content provider." *Dimeo v. Max*, 433 F. Supp. 2d at 529. Section 230's immunity applies even where the content is provided by a contractor of the online service provider (*i.e.*, pursuant to a contractual relationship). *See Blumenthal v. Drudge*, 992 F. Supp. 44, 51 (D.D.C. 1998) (granting judgment on Section 230 grounds, notwithstanding the payment of monies in exchange for the allegedly offensive content). Additionally, even minor changes to the information made by the intermediary do not strip the intermediary of Section 230 immunity. *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008) (en banc). Finally, *Green v. Am. Online (AOL)* makes clear that a Section 230 dismissal is appropriately granted at the initial stage of the litigation – in that case, the Third Circuit affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of a "one hundred and ten paragraph pro se amended complaint, aptly described by the District Court as 'not especially clear,'" based on the statutory immunity provision of Section 230. *Green v. Am. Online (AOL)*, 318 F.3d 465 at 468.

1.      **The WhitePages Parties Provide an Interactive Computer Service**

There can be no dispute that the WhitePages Parties provide an "interactive computer service." Section 230 defines an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users

to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. §230(f)(2). Mr. Obado's Second Amended Complaint in this action acknowledges that the WhitePages Parties enables multiple users to access data including "age and personal information" about Plaintiff. (SAC ¶ 63.)

### 2. Mr. Obado Treats the WhitePages Parties as the "Publisher" of His Age

The WhitePages Parties also satisfy the second requirement for application of Section 230. There can be no dispute that Mr. Obado seeks to treat the WhitePages Parties as the publisher of his age. Each of Mr. Obado's claims against the WhitePages Parties is based on the publication of his age on websites operated by the WhitePages Parties and the harm to Mr. Obado that allegedly resulted from such publication.

As courts have repeatedly held, Section 230's immunity applies broadly to preclude a wide range of claims against providers of interactive computer services based on information that they make available, including the types of claims asserted by Mr. Obado against the WhitePages Parties—*i.e.*, claims based on alleged defamation and resulting emotional distress. *See, e.g., Dimeo v. Max*, 433 F. Supp. 2d at 531 (noting that Section 230 barred the plaintiff's defamation claim); *Directory Assistants v. SuperMedia, LLC*, 884 F. Supp. 2d 446, 450 (E.D. Va. 2012) ("when a consumer review website is found to be a service provider and not an information content provider, the CDA precludes liability for defamation"); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 538 (E.D. Va. 2003) (holding that § 230(c) bars claims for intentional infliction of emotional distress, unjust enrichment, negligence and fraud).

### 3. Mr. Obado Alleges that the WhitePages Parties Published His Accurate Age – Which the WhitePages Parties Must Have Obtained from a Third Party

Mr. Obado is complaining about the WhitePages Parties' publication of his correct age.

16

(SAC ¶63.) He has failed to plead, in compliance with the pleading standards announced in *Twombly*, 550 U.S. at 570, that the WhitePages Parties created or developed the content at issue. Indeed, there is no plausible way for the WhitePages Parties to have obtained Mr. Obado's correct age from any source *other* than a third party, such as a repository of public birth records or a public court filing (such as Mr. Obado's complaints filed in federal courts).

Indeed, his SAC is focused on the WhitePages Parties' alleged failure to *remove* this information. (*See, e.g.*, SAC ¶¶ 50-51 (alleging that the WhitePages Parties' online posting of Plaintiff's "advanced age"…"negatively affect[ed] Plaintiff's ability to procure employment"). Mr. Obado bears the responsibility of alleging facts that would allow the Court to draw a reasonable inference that the WhitePages Parties were responsible for the creation or development of the information regarding Mr. Obado's age. *See Iqbal*, 555 U.S. at 668 ("The complaint must, however, plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'").[4] Mr. Obado's SAC fails to do this.

Consequently, Section 230 provides the WhitePages Parties with immunity from all of Mr. Obado's claims, and therefore the claims must be dismissed.

## IV.    CONCLUSION

Mr. Obado fails to state a claim against the WhitePages Parties. The gist of his argument is that the WhitePages Parties published his correct age – a fact pattern which, as a matter of law, does not make the WhitePages Parties liable for defamation, "reverse age discrimination," or common law fraud. Mr. Obado's other causes of action do not allege specific wrongdoing by the WhitePages Parties, and on their face preclude liability of the WhitePages Parties. Mr. Obado's

---

[4] Mr. Obado's allegation that WhitePages "republished" third party posts that were defamatory, while vague, suffer from the same infirmities—these allegations are also barred by Section 230.

17

claims against the WhitePages Parties are also barred by Section 230 of the Communications Decency Act.  For the foregoing reasons, WhitePages, Inc. and Switchboard LLC respectfully request that the Court dismiss Mr. Obado's Complaint against them in its entirety, and with prejudice.

Dated: September 19, 2013

FOCAL PLLC                                                          LAW OFFICE OF MICHAEL LIPUMA

By: _____                             By: s/ Michael LiPuma
    Venkat Balasubramani                                   Michael LiPuma, Esq.
    (*pro hac vice* pending)                               325 Chestnut Street, Suite 1109
    Sean McChesney                                         Philadelphia, PA 19106
    (*pro hac vice* pending)                               Tel: (215) 922-2126
    800 Fifth Avenue, Suite 4100                           Fax: (215) 922-2128
    Seattle, Washington 98104
    Tel: (206) 529-4827
    Fax: (206) 260-3966

*Attorneys for Defendants WhitePages, Inc. and Switchboard LLC*

18

## CERTIFICATE OF SERVICE

I certify that on September 20, 2013, I caused a copy of the foregoing document, together with all supporting papers, to be filed by ECF, which will provide notice to all parties of record who are registered for electronic filing.  A copy of the papers was sent via U.S Mail, postage prepaid, to Plaintiff Dennis Obado at the following adddress:

Dennis Obado, pro se
1034 Edpas Road
New Brunswick, New Jersey 08901

s/ Michael Lipuma
Michael LiPuma, Esq.

19