NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| DENNIS OBADO, | : | |
| | : | |
| Plaintiff, | : | Civil No. 13-2382 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ED MAGEDSON, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

PISANO, District Judge.

Pro se Plaintiff, Dennis Obado, has filed a ninety-three page, seventeen count Second Amended Complaint against nearly twenty defendants. Plaintiff has successfully served eight defendants, all of which have now moved to dismiss the Second Amended Complaint. Plaintiff opposes all these motions. The Court decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants these motions.

## I.      Background

On April 9, 2013, Plaintiff filed a fifty-four page Complaint against fifteen defendants. By May 22, 2013, Plaintiff filed his ninety-three page Second Amended Complaint ("SAC"), which included approximately seventeen counts against nearly twenty defendants. Plaintiff ultimately served eight of the named Defendants: (1) Intelius Inc., (2) Xcentric Ventures, LLC, (3) Switchboard LLC & Whitepages, Inc., (4) Enom.com, (5) Softlayer Technologies, Inc., (6) Neustar, Inc., (7) Yahoo! Inc., and (8) Google Inc. (together, the "Defendants").

This entire lawsuit stems from certain alleged blog postings made by two individuals. The first posting was made on October 9, 2012 by an anonymous blogger with the alias "Mama Duka," who made certain defamatory comments concerning Plaintiff on the website www.ripoffreport.com.  The second posting was made by an individual named Diop Kamau (a.k.a. "Don Jackson") who made a number of postings that are allegedly defamatory and of a private nature regarding Plaintiff on various websites, including www.policeabuse.com, maryhoerster.blogspot.com, www.ripoffreport.com, www.scribd.com, www.yousendit.com. Plaintiff has brought suit against the Defendants because they displayed, distributed or linked to these third-party commentary and images.  *See* SAC ¶¶ 3, 14, 62, 82–83, 94.  Plaintiff also alleges that Defendants engaged in "editing functions" and "publishing functions" by including links to the posts at issue in search results, sorting these results in a "disparate, and discriminatory manner," and by not removing those results upon notice and demand.  *See id.* at ¶¶ 22, 31, 34, 47–48, 52, 62, 82–83, 92, 99, 110–16, 144, 147.  Plaintiff also asserts that the Defendants displayed allegedly "defamatory search terms" such as "Dennis Obado and criminal" and "Dennis Obado's workers compensation case" through search results or "post[ed] defamatory images" with Plaintiff's name.  SAC ¶¶ 23, 29, 47, 61, 68, 83.  Plaintiff also alleges that Defendants have refused to remove and/or investigate the materials in violation of their "terms of use policy, confidentiality agreement, privacy policies, and opt out policies."  *See* SAC ¶¶ 45, 53. 55, 57.  Plaintiff seeks $500 million in damages, plus injunctive relief.  There is no allegation that any of the Defendants actually authored any of the posts, third-party websites, or images at issue in this case.

As mentioned, the SAC consists of seventeen counts.  These seventeen counts include claims for the following:  defamation, slander per se and per quod, and libel per se and per quod;

intentional infliction of emotional distress; negligent infliction of emotional distress; a violation of the New Jersey Consumer Fraud Act ("CFA"); punitive damages; improper publication of private facts; invasion of privacy; intrusion upon seclusion; false light; a violation of the Age Discrimination in Employment Act ("ADEA"); unfair and deceptive practices under state law; common law fraud; a second defamation claim in which Plaintiff alleges that Defendants conspired with each other; falsity; "damage to reputation, and damage to emotional and mental health"; and "fault-negligence and actual malice."  All the claims are brought against all Defendants, except for four counts:  improper publication of private facts (Count Six), invasion of privacy (Count Seven), intrusion upon seclusion (Count Eight), and reverse discrimination under the ADEA (Count Nine).  Those four counts are brought against defendants Intelius, Diop Kamau (who has not been served), and/or the individual bloggers.

Each Defendant has filed a motion to dismiss.  Due to Plaintiff's pro se status, the briefing schedule has been extended, allowing Plaintiff extra time to respond to each motion.  Accordingly, the first motion to dismiss was filed in December 2013, and the final reply brief was filed on May 23, 2014.  To put it mildly, Plaintiff has been an active litigant, filing numerous entries on the docket in support of his SAC.  On March 3, 2014, the Court entered an Order, advising Plaintiff that any amendment submitted after the opposition due date would be disregarded.  *See* ECF No. 158.  Plaintiff continued to file such "amended" oppositions, however.[1]  The Court has reviewed these oppositions in consideration of Plaintiff's pro se status, and has considered them to the degree necessary.  While some Defendants have raised additional, nuanced arguments regarding why the SAC should be dismissed, each motion is

---

[1] Plaintiff has also filed certain briefs that he has titled "cross-motions for summary judgment."  To the extent that these briefs could be considered "cross-motions," the Court need not address their applicability because Defendants are immune from Plaintiff's claims.

premised on Defendants' claim that they are immune from suit under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the Plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  When assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Any legal conclusions are "not entitled to the assumption of truth" by a reviewing court. *Id.* at 679.  Rather, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.  See also Fowler*, 578 F.3d at 210 (explaining that "a complaint must do more than allege a plaintiff's entitlement to relief").

Generally, the Court's task in assessing a motion to dismiss requires it to disregard any material beyond the pleadings.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  A district court may, however, consider the factual allegations within other documents, including those described or identified in the Complaint and matters of public record, if the plaintiff's claims are based upon those documents.  *See id.* at 1426; *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (explaining that the court may properly consider the "complaint, exhibits attached to the complaint, matters of public record, as well as indisputably authentic documents if the complainant's claims are based upon these documents").

## III.   Discussion

### A.   Background of the CDA

The question facing this Court is whether Defendants have been granted statutory immunity against Plaintiff's claims.  Section 230 of the CDA states, in relevant part:  "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Section 230 also provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).

Therefore, the "plain language" of § 230 "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cert denied*, 538 524 U.S. 937 (1998); *see also Green v. Am. Online*, 318 F.3d 465, 470–71 (3d Cir. 2003); *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000).  Section 230 "overrides the traditional treatment of publishers, distributors, and speakers under statutory and common law," due to Congress's decision "'not to treat providers of interactive

computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others.'"  *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003) (quoting *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C.1998)).  In other words, "§ 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role," and "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone, or alter content-are barred."  *Zeran*, 129 F.3d at 330; *see also Green*, 318 F.3d at 471. Under the statute, there are certain causes of action that are specifically not barred by § 230; namely, cases of action based on (1) federal criminal statutes, (2) intellectual property law, (3) state law "that is consistent with this section," and (4) the Electronic Communications Privacy Act of 1986.  47 U.S.C § 230 (e)(1)-(4).

"Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum."  *Zeran*, 129 F.3d at 330.  Congress stressed in specific statutory findings that "[t]he Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."  42 U.S.C. § 230(a)(3).  Congress, therefore, recognized the threat that tort-liability would pose to freedom of speech in the Internet, and wanted to immunize service providers for the communications of otherwise in order to avoid government regulation of speech:  "It is the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."  *Id.* § 230(b)(2).  As the Fourth Circuit noted as early as 1997:

The specter of tort liability in an area of such prolific speech would have an obvious chilling effect.  It would be impossible for service providers to screen each of their millions of postings for possible problems.  Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted.  Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran*, 129 F.3d at 331.

> B.      Defendants Qualify for Immunity under the CDA

In order to qualify for immunity under § 230, three elements must be met:  (1) the defendant must be a provider or user of an "interactive computer service," (2) "the asserted claims must treat the defendant as a publisher or speaker of information," and (3) "the challenged communication must be information provided by another information content provider."  *Dimeo v. Max*, 433 F. Supp. 2d 523, 529 (E.D. Pa. 2006), *aff'd*, 248 F. App'x 280 (3d Cir. 2007).  Once CDA immunity applies, providers are immune from "any" claim arising out of content originating from a third party, regardless of the theory underlying the cause of action.  47 U.S.C. § 230(e)(3); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009) ("[W]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.").

Here, there is no dispute that Defendants are all providers of an "interactive computer service," as defined in 47 U.S.C. § 230(f).[2]  Likewise, there is no dispute that the posts constitute "information provided by another information content provider."  47 U.S.C. § 230 (c)(1).  An information content provider "means any person or entity that is responsible, in whole or in part,

---

[2] Under § 230(f)(2), an "'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."

for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3).  Plaintiff's SAC makes clear that the allegedly defamatory posts were created by and authored entirely by an anonymous blogger named "Mama Duka" and an individual named Diop Kamau.

Likewise, in regards to the second element, it is clear that each of Plaintiff's seventeen claims "treat" Defendants as the "publisher" and not the creator of the alleged defamatory content.  Plaintiff alleges that Defendants "published" and "distributed" the allegedly defamatory blogs posted on www.ripoffreport.com and other sites through "internet search results."  It is not alleged (nor could it be) that any Defendants created this content.  Plaintiff is simply seeking to hold the various Defendants liable for "publishing" such content in its search engine results or otherwise providing access to such results.  In each instance raised by Plaintiff's tort or federal claims, Defendants either archived or simply provided access to content that was created by third parties.  The allegedly defamatory statements were created by "Mama Duka" and Diop Kamau.  Plaintiff has not alleged that Defendants in any way participated in the creation of the content of the blogs, or altered the content of the blogs in any way.   Clearly, § 230 provides immunity for service providers like Defendants on exactly the claims that Plaintiff alleges here.  *See Green*, 318 F.3d at 471 (holding § 230 barred tort action against AOL for its allegedly negligent failure to remove defamatory material from a chat room on its network); *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (finding plaintiff's claims, allegedly based on MySpace's failure to implement appropriate safety measures, are "merely another way of claiming MySpace was liable for publishing the communications" of third-parties and are consequently barred by the CDA); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500–01 (E.D. Pa. 2006) (explaining Google is immune under the CDA for tort claims premised on allowing access

8

to allegedly defamatory messages posted by third-party users on Usenet's message boards); *Dimeo*, 433 F. Supp. 2d at 530–31 (holding CDA immunity applied for defamation claim against an owner of a website that hosts online message board where a third-party user posted allegedly defamatory statements); *Milgrim v. Orbitz Worldwide, Inc.*, 419 N.J. Super. 305, 316 (2010) (finding defendants immune from liability under the CFA for conduct of third-party sellers using defendants' websites).

In an attempt to avoid CDA immunity, Plaintiff argues that Defendants have engaged in certain "editing functions" by posting "Mama Duke's false defamatory blog, in a way that the public would construe this blog as fact, by not including in the same result, Plaintiff's rebuttal in a conspicuous manner, in the same first page of [the search results]" and by "controlling which defamatory blog wording would be posted on internet search engines." *See* SAC ¶¶ 22, 31, 48, 83, 92. These claims fail to create liability for the Defendants. The Third Circuit has held the CDA immunizes traditional publisher conduct, such as "deciding whether to publish, withdraw, or alter content." *Green*, 318 F.3d at 471. In the context of an internet service provider, "such decisions would include deciding whether to provide access to third-party content or whether to delete the content from its archival or cache." *Mmubango v. Google, Inc.*, CIV. A. 12-1300, 2013 WL 664231, at *3 (E.D. Pa. Feb. 22, 2013) (citing *Green*, 318 F.3d at 471). Thus, any claims premised on any posting or alleged manipulation of search results to favor the alleged defamatory content about Plaintiff are not actionable under § 230. Further, even assuming that Defendants did selectively choose how to display certain search results, these types of editorial functions are still protected by § 230. *See Asia Econ. Inst. v. Xcentric Ventures LLC*, CV 10-01360, 2011 WL 2469822, at *6 (C.D. Cal. May 4, 2011) (finding that alleged manipulation of HMTL code to make certain third-party reviews "highly visible and influential in Google search

results" did not render the defendants "information content providers" because "[i]ncreasing the visibility of a statement is not tantamount to altering its message").  In reality, the results of a search engine query are determined by an underlying algorithm.  None of the relevant Defendants used any sort of unlawful criteria to limit the scope of searches conducted on them; "[t]herefore, such search engines play no part in the 'development' of the unlawful searches" and are acting purely as an interactive computer service.  *Fair Housing Council of San Fernando Valley v. Roommtes.com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008).  Accordingly, Defendants are entitled to immunity under the CDA.

Plaintiff also asserts that Defendants have failed to remove the alleged defamatory blogs in violation of each Defendant's terms of use and privacy policies.  *See* SAC ¶¶ 29, 55.  However, § 230 immunity extends to the service provider's decisions about how to treat potentially objectionable material.  As the Third Circuit has explained, § 230 "specifically proscribes liability" in situations where an interactive service provider makes a decisions "relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role."  *Green*, at 470–71.  Defendants cannot be held liable for failing to withdraw any of the alleged defamatory statements, just as they cannot be found liable for "deciding" to publish any such statements through its search results.  *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Deciding whether or not to remove content or deciding when to remove content falls squarely within Ask.com's exercise of a publisher's traditional rule and is therefore subject to the CDA's broad immunity.").

Plaintiff also argues that Defendants displayed through search results certain "defamatory search terms" like "Dennis Obado and criminal" or posted allegedly defamatory images with Plaintiff's name.  *See* SAC ¶¶ 23, 29, 47, 61, 68, 83.  As Plaintiff himself has alleged, these

10

images at issue originate from third-party websites on the Internet which are captured by an algorithm used by the search engine, which uses neutral and objective criteria.  Significantly, this means that the images and links displaced in the search results simply point to content generated by third parties.  *See, e.g.*, *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 885 (E.D. Wis. 2009) *aff'd*, 623 F.3d 436 (7th Cir. 2010) (explaining that search results are not created by the search engine itself; rather the search engine "only displays the content in response to a C-user's search results" and therefore does not create the content); *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 701–02 (E.D. Va. 2004) (explaining how search engines work).  Thus, Plaintiff's allegations that certain search terms or images appear in response to a user-generated search for "Dennis Obado" into a search engine fails to establish any sort of liability for Defendants.  These results are simply derived from third-party websites, based on information provided by an "information content provider."  The linking, displaying, or posting of this material by Defendants falls within CDA immunity.  *See Stayart*, 651 F. Supp. 2d at 885 (explaining that Yahoo! search results for plaintiff's name were not created by Yahoo! itself but by another information content provider); *Murawski*, 514 F. Supp. 2d at 591 (holding that Ask.com could not be held liable for information that appears as a result of a search query for the plaintiff's name); *Parker*, 422 F. Supp. 2d at 501 (finding that Google is not an "information content provider" because "the information on websites that appears as a result of a search query" are created by "other internet users").

Likewise, suggested search terms auto-generated by a search engine do not remove that search engine from the CDA's broad protection because such auto-generated terms "indicates only that other websites and users have connected plaintiff's name" with certain terms.  *Stayart v. Google Inc.*, 783 F. Supp. 2d 1055, 1056–57 (E.D. Wis. 2011) *aff'd*, 710 F.3d 719 (7th Cir.

2013) (finding that plaintiff's allegation that Google suggested the phrase "bev stayart levitra"—the plaintiff's name and the name of a sexual dysfunction drug—when plaintiff Googled her name did not allow plaintiff to "get around [the CDA] obstacle"). This is true even if, as Plaintiff argues, Defendants acted in bad faith. *See Levitt v. Yelp!, Inc.*, No. C-10-1321, 2011 WL 5079526, at *7–8 (C.D. Cal. Oct. 26, 2011) (holding that CDA immunity applied "regardless of whether the publisher acts in good faith").

      C.    <u>Plaintiff's Claims Do Not Qualify for any Exceptions to the CDA</u>

      Finally, in a last-ditch attempt to avoid his claims being barred by Section 230, Plaintiff has offered up a scattering of reasons in his Oppositions for why his claims should not be barred under certain exceptions to the CDA. Plaintiff first argues that the First Amendment precludes immunity under the CDA. Next, Plaintiff also asserts "new" claims for a right of publicity violation, criminal conspiracy, and promissory estoppel, apparently in an effort to avail himself of certain limited exceptions to the CDA's otherwise broad immunity. [3] Even if the Court were to consider Plaintiff's new allegations, which do not exist within the SAC,[4] they still fail to circumvent § 230 immunity.

      First, Plaintiff argues that a "1st Amendment exception" for "fighting words" and "hate speech" bars immunity under the CDA. In other words, Plaintiff appears to be arguing that,

---

[3] Plaintiff has also cited in his Oppositions that Plaintiffs have violated the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 160A, but has failed to allege any facts to show that Yahoo violated a "work of visual art." *See* 17 U.S.C. § 101. The only "work" discussed, however, is Plaintiff's purported manuscript, which does not qualify as a "work of visual art" under VARA. Furthermore, Plaintiff only alleges that Yahoo "distributed criminal blogs," not any part of Plaintiff's manuscript. Plaintiff also argues that Defendants have violated the Sarbanes-Oxley Anti-Shredding Statute, 18 U.S.C. § 1519, but has failed to show how any Defendants have obstructed a federal investigation. Finally, Plaintiff argues in passing that Defendants have violated numerous other federal criminal statutes aimed at protecting civil rights. Even assuming Plaintiff could bring a claim under such criminal statutes, Plaintiff has failed to allege how Defendants have violated his civil rights, 18 U.S.C § 241, or interfered with plaintiff's exercise of a federal protected activity or committed a hate crime against him, 18 U.S.C. § 245. Even the quickest review of the SAC shows that Plaintiff's claims are premised on defamation, not any sort of civil rights or federal criminal violation.

[4] *See Pennsylvania ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

insofar as the allegedly defamatory blog posts are outside the First Amendment, Defendants cannot be protected by the CDA for providing access or otherwise linking to that material. This argument is unavailing. The CDA is meant to shield interactive computer service providers from liability for unprotected otherwise actionable speech originating from other information content providers. Congress intended to eliminate any possible "chilling effect" that could be caused by "the threat [of] tort-based lawsuits against interactive services for injury caused by the communications of others." *Ben Ezra*, 206 F.3d at 985 n.3 (internal quotation marks and citation omitted). Accordingly, regardless of whether the third-party speech itself is unlawful, CDA immunity applies. *See, e.g.*, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) ("It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech.").

Plaintiff's argument regarding his right to publicity or any other intellectual-property claim appears to be an attempt to rely on the CDA's intellectual-property exception. Plaintiff asserts that Defendants infringed on his right to publicity and privacy by using his likeness to generate profits for their companies because he is an author. He argues that CDA immunity does not apply where a corporation publicizes an author in a negative way to create business for that corporation. Even if this Court were to assume that the CDA's intellectual exception applies to state law claims like the ones Plaintiff invokes,[5] Plaintiff's argument fails as a matter of law.

Plaintiff's theory seems to be based on references to Mr. Obado that appear as part of the standard search results of the various search engine Defendants. The mere appearance of Plaintiff's name or image as part of the search results displayed in response to a user-generated query does not mean that the relevant company used Plaintiff' name for advertising or trade

---

[5] The Ninth Circuit, for example, has expressly held that the intellectual-property exception applies only to federal intellectual property claims, not to state law claims. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118–11120 1120 n.5 (9th Cir. 2007).

purposes.  There is, in fact, no grounds for any plausible inference that any of the Defendants used Plaintiff's name for advertising or trade purposes such as would be necessary to state a claim for right to publicity.  *See McFarland v. Miller*, 14 F.3d 912, 919 n.11 (3d Cir. 1994) ("In New Jersey, to sustain an action claiming misappropriation of the image of another, a commercial purpose must be present."); *Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 909–10 (D.N.J. 1986) ("[T]he use must be mainly for purposes of trade, without a redeeming public interest, news, or historical value.").  Mere mention of a plaintiff's name is not enough to show appropriation; "nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity."  *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 6923 (N.J. Super. Ct. App. Div. 1982).  Here, the conduct that Plaintiff alleges infringed on his right to publicity is nothing more than the ordinary "dissemination of news or information" that cannot give right to a right of publicity claim.  *Tellado*, 643 F. Supp. at 909–10.  "Plaintiff's allegations establish no more than that [Defendants] enable[] internet users to access publically available materials connected to plaintiff's name. And it is not unlawful to use a person's name 'primarily for the purpose of communicating information . . . .'" *Stayart*, 783 F. Supp. 2d at 1057 (quoting *Zacchini v. Scripps–Howard Broadcasting Co.,* 433 U.S. 562, 574 (1977)).  To find otherwise would allow any Internet search engine to face a claim from anyone whose name or image appears on the Internet in a way that person does not like.   This is exactly what § 230 immunity tried to prevent.

Plaintiff's promissory estoppel argument also fails.  While not an exception to the CDA, certain courts have allowed promissory estoppel claims to go forward if there was an enforceable promise made to the injured party.  For example, in *Barnes*, the Director of Communications of

14

Yahoo personally called the plaintiff and promised to "personally" make sure that the content at issue was removed from Yahoo's website. *Barnes*, 570 F.3d at 1098–99. Accordingly, the Ninth Circuit allowed a promissory estoppel claim to proceed because an enforceable promise was made to plaintiff. *See id.* at 1107. This is inapposite here, where Plaintiff has not alleged that any such legally enforceable promise was made to remove any content by the Defendants. While Plaintiff has argued in his Opposition that Defendants emailed Plaintiff indicating that they would investigate Plaintiff's complaints, this fails to establish an enforceable promise to actually remove the content. Instead, Plaintiff seeks to impose "[l]iability upon notice," which "would defeat the . . . purposes advanced by § 230 of the CDA." *Zeran*, 129 F.3d 327, 333 (4th Cir. 1997); *see also Mmubango*, 2013 WL 664231, at *1, 3 (rejecting claim that Google was required to remove links to third-party derogatory statements about the plaintiff after receiving notice); *Gavra v. Google Inc.*, 5:12-CV-06547-PSG, 2013 WL 3788241, at *2 (N.D. Cal. July 17, 2013) (explaining that liability is not created under § 230 by "refraining from removing objectionable content, despite receiving notice"). As explained in detail above, any alleged refusal to remove certain content from search results by the Defendants is nothing more than an "exercise of a publisher's traditional editorial functions," and is preempted by the CDA. *Green*, 318 F.3d at 471.

Finally, Plaintiff argues that Defendants engaged in criminal conspiracy to violate his rights. Even if Plaintiff had alleged any facts to sustain this claim, the CDA exception for federal criminal statutes applies to government prosecutions, not to civil private rights of action under states with criminal aspects. *See M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1054–56 (E.D. Mo. 2011) (rejecting argument that CDA immunity did not apply to civil remedy provisions for personal injuries under 18 U.S.C. § 2255); *Doe v. Bates*,

5:05-CV-91-DF-CMC, 2006 WL 3813758, at *4–5 (E.D. Tex. Dec. 27, 2006) ("Congress decided not to allow private litigants to bring civil claims based on their own beliefs that a service provider's actions violated the criminal laws ."). Accordingly, Plaintiff has failed to establish that immunity under the CDA does not apply.

In sum, the CDA effectively works to immunize parties like the Defendants from claims that they displayed information from third parties that may depict a party in an unfavorable light. "[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003); *see also Seldon v. Magedson*, 11 CIV. 6218, 2012 WL 4475274, at *16 (S.D.N.Y. July 10, 2012) ("Thus, under section 230 internet service providers are shielded from liability arising from defamation and other state-law claims that are premised on posts of, or links to, third-party content."). This case, quite simply, attempts to hold Defendants accountable for the publication of allegedly defamatory blog postings by third-parties. Accordingly, Defendants are entitled to immunity from all of Plaintiff's claims—state and federal[6]—under § 230 of the CDA.

## III.    Conclusion

Plaintiff has attempted to phrase his allegations and arguments in a way to avoid the reach of § 230. These allegations, however, do not distinguish the complained-of actions of Defendants from any other website that has published content that led to an innocent person's injury. Congress has made the policy decision to hold such websites immune from suits arising

---

[6] A defendant is likewise immune from liability for a claim under federal law that attempts to place a service provider in a publisher's role. *See, e.g.*, *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 668–69 (7th Cir. 2008) (finding that Section 230 preempts a claim under the Fair Housing Act); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 538–39 (E.D. Va. 2003), *aff'd sub nom.*, *Noah v. AOL-Time Warner, Inc.*, 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004). Here, Plaintiff's claim under the ADEA clearly attempts to hold Defendant Intelius liable for its failure to exercise "a publisher's traditional editorial functions—such as whether to publish, withdraw, postpone or alter content," *Zeran*, 129 F.3d at 330, and is therefore barred under Section 230. *See* SAC ¶ 50.

from these injures.  Try as Plaintiff may, this is a defamation suit at its core—not a copyright suit

or civil rights case.  It should be noted, however, that Plaintiff is not entirely without recourse.

He may bring suit against the actual bloggers who wrote these defamatory posts.  His claims

against Defendants, however, must be dismissed.  Accordingly, Defendants' motions to dismiss

the SAC are granted.  Because any amendment to the SAC would be futile, dismissal will be

with prejudice.  *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  An appropriate Order

accompanies this Opinion.


                                        /s/ Joel A. Pisano_____
                                        JOEL A. PISANO, U.S.D.J.

Dated: July 31, 2014